UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,
*ex rel.* DR. JOSHU RAITEN,

      Plaintiff/Counter-Defendant,

v.                                                        Case No.:  2:19-cv-28-SPC-NPM

KORUNDA MEDICAL, LLC (d/b/a
Korunda Pain Management
Center), and DR. ZDENKO
KORUNDA,

      Defendants/Counter-
Plaintiffs.

---

## OPINION AND ORDER

Before the Court is Plaintiff/Counter-Defendant Dr. Joshu Raiten's ("Relator") motion to dismiss Defendants/Counter-Plaintiffs Korunda Medical, LLC (d/b/a Korunda Pain Management Center) ("Practice"), and Dr. Zdenko Korunda's ("Dr. Korunda" and jointly, "Defendants") amended counterclaim. (Doc. 65). Defendants responded in opposition. (Doc. 77). For the below reasons, the Court grants the motion.

## Background

This is a qui tam action brought under the False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA"). Relator is a physician who Defendants employed from February 1, 2016, until July 8, 2018. When Relator began his employment

with Defendants, he received a $25,000 signing bonus ("Signing Bonus") per his employment agreement. The employment agreement specified if Relator's employment terminated for "any reason" within three years, he had to return the Signing Bonus. The Practice is a limited liability company established in 2007 by Dr. Korunda. It provides primary medical care, physical therapy, and pain management services.

Relator alleges that Defendants engaged in a multifaceted scheme to defraud Medicare and Medicaid. According to Relator, Defendants falsified patient records by fabricating anxiety and depression diagnoses for patients. Defendants used these false diagnoses to justify billing for monthly urine testing, which proved lucrative.[1] Additionally, Defendants submitted medical records falsely indicating they performed nerve block procedures on patients, rather than the less lucrative joint injections they actually performed.

The fraud purportedly did not stop there. Relator alleges that the Practice "funneled" patient referrals to a lab and physical therapy clinic Dr. Korunda owned, thereby increasing the amount of fraudulent services billed. (Doc. 61 ¶¶ 46–48, 50–53). Further, Relator alleges Dr. Korunda told him that because he is "capped at ancillary income," he pays any excess income to his wife (who is not employed at the Practice) by, *inter alia*, issuing payments to a

---

[1] The amended complaint alleges that the frequency of urine tests allowed to be billed to Medicare and Medicaid depends on a patient's risk level for narcotics abuse. (Doc. 61 ¶ 37).

non-profit she runs.  (*Id.* ¶¶ 66–69).  On top of this, Defendants billed Medicare and Medicaid for services Dr. Korunda did not personally render or supervise, yet falsely represented that he had.[2]  Finally, Dr. Korunda failed to have licensed personnel present for procedures to save money.  This made billing Medicare or Medicaid for the procedure improper and put patients at risk.  (*Id.* ¶¶ 90–96).  Defendants falsified "hundreds, if not thousands, of medical records" to perpetuate the scheme.  (*Id.* ¶ 99).  Dr. Korunda allegedly boasted about the fraud scheme to Relator and ordered him to participate, calling it the "path to partnership" at the Practice.  (*Id.* ¶ 56).

Relator "consistently objected to and refused to partake in the Defendants' fraud."  (*Id.* ¶ 101).  Dr. Korunda allegedly disciplined Relator for his objections.  Relator describes making specifically forceful objections in December 2017 and January 2018 that he would not participate in what he viewed to be fraud.  On February 9, 2018, Defendants provided written notice they intended to terminate Relator's employment contract.  Relator's employment officially ended on July 8, 2018.

Relator filed his qui tam complaint on January 16, 2019, under seal. (Doc. 1).  On December 2, 2025, the United States filed a notice indicating it

---

[2] Dr. Korunda frequently traveled to Croatia, his native country.  Relator allegedly observed medical records indicating Dr. Korunda performed or supervised services at the Practice while he was out of the United States.  (Doc. 61 ¶ 85).

would not intervene in this action, and the Court unsealed the complaint. (Docs. 47, 48). Under 31 U.S.C. § 3730(b)(1), Relator exercised his right to prosecute the case on behalf of the United States.

Relator brings three claims against Defendants: violation of the FCA for submitting false claims, 31 U.S.C. § 3729(a)(1)(A) (Count I), violation of the FCA making false records and/or statements in connection with false claims, 31 U.S.C. § 3729(a)(1)(B) (Count II), and violation of the anti-retaliation provision of the FCA, 31 U.S.C. § 3730(h) (Count III).

Defendants answered the complaint and filed a counterclaim. (Doc. 62). Defendants bring a breach of contract counterclaim against Relator to recover the Signing Bonus. Defendants allege that Relator's employment contract obligated him to return the Signing Bonus if his employment terminated within the first three years "for any reason." (*Id.* ¶ 19). Defendants allege Relator breached the agreement by failing to return the Signing Bonus upon being terminated in July 2018, less than three years after his employment began. Relator moves to dismiss the counterclaim under Federal Rule of Civil Procedure 12(b)(6), arguing that the claim is time-barred.

## Legal Standard

A motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) "is evaluated in the same manner as a motion to dismiss a complaint." *Whitney Info. Network, Inc. v. Gagnon,* 353 F. Supp. 2d 1208, 1210

(M.D. Fla. 2005) (citation omitted).  A district court should dismiss a claim where a party fails to plead facts that make the claim facially plausible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).  When considering a Rule 12(b)(6) motion, the reviewing court must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff.  *See Iqbal*, 556 U.S. at 678.

### Analysis

Relator argues that Defendants' counterclaim should be dismissed because it is barred by the applicable statute of limitations.  Defendants' counterclaim accrued as soon as Relator's employment ended on July 8, 2018, and he failed to return the Signing Bonus.  (Doc. 62 ¶ 25); *Multiphone Latin Am. Inc. v. Millicom Int'l Cellular S.A.*, No. 25-23249-CIV, 2025 WL 2480412, at (S.D. Fla. Aug. 28, 2025) ("A breach-of-contract claim generally accrues at the time of breach.").  Thus, Relator argues, the statute of limitations expired on July 8, 2023.  (Doc. 65 at 11); *see Jeunesse, LLC v. LifeWave, Inc.*, No. 6:15-CV-131-0RI-28, 2015 WL 4911349, at *2 (M.D. Fla. Aug. 17, 2015) (noting the statute of limitations for a breach of contract action is five years) (citing Fla. Stat. Ann. § 95.11).  Defendants filed their counterclaim on February 20, 2026, more than two years after the limitations period lapsed.  Defendants respond

that their counterclaim is compulsory because it is transactionally related to Relator's anti-retaliation claim. (Doc. 77 at 8). And since Relator filed his complaint within the five-year statute of limitations period, the argument goes, the limitations period is tolled and the counterclaim is timely. (*See id* at 9). For the reasons below, the Court agrees with Relator.

Federal Rule of Civil Procedure 13(a)(1)(A) provides that a counterclaim is compulsory when it arises "out of the transaction or occurrence that is the subject matter of the opposing party's claim." A permissive counterclaim is "defined as 'any claim that is not compulsory.' " *Morton's of Chicago / Miami, LLC v. 1200 Castle 100-A, Inc.*, No. 13-23366-CIV, 2014 WL 11944281, at *2 (S.D. Fla. Aug. 22, 2014) (citing Fed. R. Civ. P. 13(b)). This distinction is important because "the filing of a complaint tolls the statute of limitations on any compulsory counterclaims." *Cafe, Gelato & Panini LLC v. Simon Prop. Grp., Inc.*, No. 20-60981-CIV, 2022 WL 17987100, at *3 (S.D. Fla. Aug. 25, 2022) (collecting authority). By contrast, "tolling does not extend" to permissive counterclaims. *United States ex rel. Williams v. S. Co., Inc.*, No. 1:18-CV-00680-SCJ, 2025 WL 2820352, at *4 (N.D. Ga. July 15, 2025). So, whether the statute of limitations bars Defendants' counterclaim turns on whether the counterclaim is compulsory or permissive.

Courts in the Eleventh Circuit use the "logical relation test" to determine whether counterclaims are compulsory and arise from the same transaction or

occurrence as the original claim. *U.S. ex rel. Mueller v. Eckerd Corp.*, 184 F.R.D. 686, 687 (M.D. Fla. 1999) (collecting authority). A logical relationship exists between a claim and a counterclaim when "(1) the same aggregate of operative facts serves as the basis of both claims; or (2) the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 (11th Cir. 1991) (citation modified) (quotation omitted). "This is a loose standard," *Mueller*, 184 F.R.D. at 687, and courts apply the logical relationship test using a "broad, realistic interpretation." *Five Percent Nutrition, LLC v. Get Fit Fast Supplements, LLC*, 391 F. Supp. 3d 1093, 1096 (M.D. Fla. 2019) (quotation omitted); *see also United States v. Amtreco, Inc.*, 790 F. Supp. 1576 (M.D. Ga. 1992) (noting "[t]he hallmark of [the logical relationship test] is its flexibility") (quotation omitted).

The Court finds Defendants' counterclaim is not compulsory under the logical relationship test. Relator's claim and Defendants' counterclaim do not share the same "aggregate of **operative** facts." *Montgomery*, 932 F.2d at 1381 (emphasis added); *see Operative*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("operative" means something is "controlling" or has "principal relevance" to a legal question). Relator's anti-retaliation claim turns on (1) whether he engaged in protected conduct under the FCA, (2) whether the Defendants knew of the protected conduct, and (3) whether Defendants took adverse action

against Relator because of the protected conduct. *See Lord v. Univ. of Miami*, 571 F. Supp. 3d 1299 (S.D. Fla. 2021). In simpler terms, the key inquiry is whether Defendants acted with an improper motive when they terminated Relator's employment at the Practice. Defendants' counterclaim asks only when the termination occurred and whether Relator is obligated to return the Signing Bonus under his employment contract.

In other words, Defendants' counterclaim "raises matters extrinsic to" Relator's claim. *Beltran v. Medcure, Inc.*, No. 6:13-CV-234-ORL-28, 2013 WL 3833208, at \*3 (M.D. Fla. July 23, 2013). The exact timing of Relator's firing and whether he returned the Signing Bonus are irrelevant to whether he was fired by Defendants for objecting to fraudulent medical practices. Defendants are free to argue, as they do, that their motive for firing Relator had to do with his behavior, rather than any fraudulent practice. (Doc. 77 at 7). But Defendants' motive is legally relevant only as a defense to Relator's anti-retaliation claim. Therefore, allegations regarding the motive for Relator's termination (*see* Doc. 62 ¶ 25) do not transform Defendants' permissive counterclaim for breach of contract into a compulsory one.

While the claims share some temporal and factual underpinning, "[t]he operative facts and the elements of proof for each of the claims are separate

and distinct."[3] *Satterfield v. CFI Sales & Mktg., Inc.*, No. 6:09-CV-1827-ORL-28, 2012 WL 640740, at \*4 (M.D. Fla. Feb. 28, 2012). The counterclaim is not compulsory simply because Defendants' employment of Relator is relevant to both claims. *See id.* at \*4 (finding breach of contract counterclaim permissive and noting the fact the original Fair Labor Standards Act ("FLSA") claims "involved plaintiff's 'employment' and 'wages' while working for defendants [was] insufficient" to find the counterclaim compulsory) (cleaned up); *Mercer v. Palm Harbor Homes, Inc.*, No. 805CV1435T30TGW, 2005 WL 3019302, at \*1–2 (M.D. Fla. Nov. 10, 2005) (finding counterclaim for conversion in FLSA action was a permissive counterclaim and noting "[t]he fact that the events surrounding the [claim] took place during [plaintiff's] employment with [defendant] is, by itself, insufficient to satisfy the 'logical relationship' test"). The Court finds Defendants' breach of contract counterclaim is permissive. Therefore, it is barred on statute of limitations grounds.

Having found Defendants' counterclaim is permissive and therefore barred by the statute of limitations, the Court need not analyze the other issues Relator raises, i.e., whether service of the counterclaim was proper or whether the Court should decline to exercise supplemental jurisdiction over

---

[3] While Defendants do not argue this point, their counterclaim does not satisfy the second prong of the logical relationship test either. Relator's anti-retaliation claim did not activate rights otherwise dormant in Defendants such that their counterclaim is compulsory. Indeed, Defendants possessed the ability to sue Relator as soon as his employment ended. *See supra* at 6. That they failed to do so is not cause to permit their counterclaim now.

the counterclaim.  (Doc. 65 at 10, 11).  Defendants' counterclaim is barred by the statute of limitations.  Therefore, the Court dismisses it with prejudice.

Accordingly, it is now

**ORDERED:**

1. Plaintiff/Counterclaim-Defendant Dr. Joshu Raiten's motion to dismiss the amended counterclaim (Doc. 65) is **GRANTED**.

2. Defendants/Counter-Claim Plaintiffs Korunda Medical, LLC and Dr. Korunda's Counterclaim (Doc. 62) is **DISMISSED with prejudice**.

**DONE** and **ORDERED** in Fort Myers, Florida on July 10, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

10